OPINION *
HARDIMAN, Circuit Judge.
The United Association of Journeyman and Apprentice Plumbers and Pipefitters, Local 74 appeals the District Court’s summary judgment in favor of the International Brotherhood of Electrical Workers, Local 313. The Court’s summary judgment denied claims brought by Local 74 arising from a collective bargaining agreement (CBA) between Local 313 and Cushman and Wakefield, Inc. Because we agree with the District Court that the CBA requires Local 74 members to remit dues to Local 313, we will affirm.
I
Since 2004, members of both Local 74 and Local 313 have worked to maintain two commercial data centers in Delaware. The property manager, Cushman, has recognized only Local 313 as the employees’ exclusive bargaining representative. Two substantially identical CBAs executed in 2004 and 2008[1] nonetheless refer to Local 74 in two relevant clauses: a union security clause in § 7(1), and a dues checkoff provision in § 10(a). Section 10(e), an agency shop clause, is also pertinent to the parties’ dispute.
Under the 2008 CBA, Cushman was obliged to deduct dues from members of both Local 74 and Local 313 in accordance with each union’s bylaws. Thus, the com *135 pany would take 5.25% from the wages of Local 74 members and 3.8% from the wages of Local 313 members, and remit the combined amount to Local 313, The electricians’ union would then forward the dues collected from Local 74 members to the plumbers’ union while keeping dues collected from its own members. This arrangement was copacetic to everyone until June 2011 when Local 313 began to keep 3.8% of the wages from all employees in the bargaining unit, irrespective of the union to which they belonged. Local 313 did continue to forward dues from Local 74 members over and above the amount it would have collected from them had they been members of Local 313 (ie., 1.45% of their wages).
The plumbers sued the electricians in the District Court alleging that Local 313 was in breach of the 2008 CBA, and that it was violating § 302 of the Labor Management Relations Act (LMRA) by collecting dues without written authorization from Local 74 members. The plumbers demanded money damages and an injunction. The parties filed cross-motions for summary judgment, which were initially considered by a magistrate judge. Finding the language of the CBA ambiguous, the magistrate judge agreed with Local 74 and recommended summary judgment in its favor. The District Court disagreed, however, finding no ambiguity and holding that the terms of the 2008 CBA plainly and unambiguously required Local 74 members to pay Local 313 under the agency shop clause in § 10(e). Accordingly, the District Court ordered summary judgment for the electricians. Local 74 filed this appeal.
II[2]
Local 74’s contract claim turns on the appropriate legal interpretation of the 2008 CBA. “We interpret collective-bargaining agreements ... according to ordinary principles of contract law, at least when, those principles are not inconsistent with federal labor policy.” M & G Polymers USA, LLC v. Tackett, — U.S. -, 135 S.Ct. 926, 933, 190 L.Ed.2d 809 (2015). Our first task therefore is to determine whether the terms of the 2008 CBA are ambiguous. See id.; see also 11 Williston on Contracts § 30:4 (4th ed. 2015) (“It is a generally accepted proposition that when the terms of a writing are plain and unambiguous, there is no room for interpretation or construction since the only purpose of judicial construction is to remove doubt and uncertainty.”).
The agency shop clause in § 10(e) of the 2008 CBA provides:
All employees covered by this agreement shall as a condition of continued employment, pay to the Union, the employee’s exclusive collective bargaining representative an amount of money equal to that paid by other employees in *136 the bargaining unit who are members of the Union....
App. 31. Section 1 of the CBA defines “the Union” as Local 313, App. 26. Therefore, all employees in the bargaining unit must pay dues to Local 313 as a condition of their employment, irrespective of the union to which they belong.
Local 74 raises two arguments against this straightforward reading of the agency shop clause. First, it argues that this interpretation conflicts with the union security clause in § 7(1), which conditions employment on membership in “the Union” — ie,, Local 313 — but which also provides that “membership in good standing in [Local 74] ... shall be considered as compliance with this provision.” App. 27. Because compulsory membership for the purpose of union security clauses is “whittled down to its financial core,” e.g., NLRB v. Gen. Motors Corp., 373 U.S. 734, 742, 83 S.Ct. 1453, 10 L.Ed.2d 670 (1963), the plumbers argue that our straightforward interpretation of § 10(e) either requires an “illegal reading” of § 7(1) that mandates full membership, or renders § 7(1) superfluous since both it and § 10(e) are satisfied by the payment of dues. Local 74 Br. 21.
We disagree. The plumbers’ assertion that our reading requires an illegal result is easily dismissed, and we find its superfluity argument unavailing. Both § 7(1) and § 10(e) effectively require only financial-core membership, and this requirement applies across the board not only to Local 74’s members, but to Local 313’s members as well. Thus, the clauses were redundant from the moment they were drafted because an employee could satisfy both the union security clause and the agency shop clause simply by paying financial-core dues to Local 313. This makes Local 74’s resort to the canon against sur-plusage largely irrelevant because, however the CBA is construed, at least one of its provisions will be redundant.[3] See Marx v. Gen. Revenue Corp., — U.S. -, 133 S.Ct. 1166, 1177-78, 185 L.Ed.2d 242 (2013); Lamie v. U.S. Trustee, 540 U.S. 526, 536, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004).
Second, Local 74 contends that the reference to its bylaws in the dues checkoff provision of § 10(a) modifies the agency shop clause in § 10(e) because “[f]or the purpose of this provision, the Bylaws of [Local 74] shall apply with respect to any of its members employed under this agreement.” App. 30 (emphasis added). The emphasized portion, the union argues, is at least ambiguous with respect to the scope of the “provision” to which Local 74’s bylaws apply, making § 10(e)’s meaning unclear. Even if we agreed that “this provision” encompasses § 10(e), the conclusion that the agency shop clause expands to permit payment of either Local 313’s or Local 74’s dues is a non sequitur. To be sure, each employee in the bargaining unit remains bound by the bylaws of his or her respective union, but that obligation cannot alter the employer’s contractual duties under § 10(e) to “the Union,” ie., Local 313, and certainly does not create any such duties between the unions. Cf. United Bhd. of Carpenters & Joiners of Am., Dresden Local No. 267 v. Ohio Carpenters Health & Welfare Fund, 926 F.2d 550, 556-57 (6th Cir.1991).
The remainder of Local 74’s arguments require us to delve into extrinsic evidence to resolve the ambiguities the union has identified in the 2008 CBA. Because we *137 agree with the District Court that the CBA is not ambiguous, that exercise is unnecessary.
* ❖ *
For the reasons stated, we will affirm the District Court’s summary judgment.[4]

 This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

. The 2004 and 2008 CBAs were signed by Cushman’s predecessors, EMCOR Facilities Services, Inc. and PM Realty Group LP, respectively. Upon becoming property manager of the data centers in 2009, Cushman assumed the terms and conditions of the 2008 CBA.

. The District Court had jurisdiction over Local 74’s claims under § 301 of the LMRA, which authorizes federal district courts to hear ‘‘[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations” and grants district courts jurisdiction over labor organizations with either principal offices or agents residing within their territory. 29 U.S.C. §§ 185(a), (c). Section 302 also, grants district courts jurisdiction "to restrain violations” of that section's prohibitions on certain financial transactions between employers and unions. 29 U.S.C. § 186(e). We have appellate jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's summary judgment, under the usual summary judgment standard. Trenton Metro. Area Local of Am. Postal Workers Union v. U.S. Postal Serv., 636 F.3d 45, 52 (3d Cir.2011).

. Nor does our reading of § 10(e) do violence to the dues checkoff provision in § 10(a) because the reference to the unions’ bylaws remains relevant to computing the amount Cushman is obligated to deduct from each employee's wages.

. To the extent that Local 313 retained dues without valid "written assignment[s]” from Local 74 members under § 302 of the LMRA, 29 U.S.C. § 186(c)(4) — an issue upon which we do not opine — money damages are not available under this section, see, e,g.; Bakerstown Container Corp. v. Int’l Bhd. of Teamsters, Local 538, 884 F.2d 105, 107-08 (3d Cir.1989), and injunctive relief is a moot point because a new CBA executed in December 2011 no longer references Local 74. See Supp.App. 91-113; see also Cushman & Wakefield Inc., 360 N.L.R.B. No. 10, 2013 WL 6091600, at *7-*10 (Nov. 19, 2013).